**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DIANE KERR, | No.  2:25-CV-1776-DC-DMC |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).   Pending before the Court are the parties' briefs on the merits, ECF Nos. 11 and 16.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole,

including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Court recommends the Commissioner's final decision be affirmed.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

Step 1     Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2     If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3     If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

/ / /

Step 4    If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

Step 5    If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on August 31, 2022.  See CAR 23.[1]  In the application, plaintiff claims disability began on March 15 ,2021.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on April 18, 2024, before Administrative Law Judge (ALJ) Alan Markiewicz.  In a May 24, 2024, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1.      The claimant has the following severe impairment(s): long COVID and chronic migraines.

2.      The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations.

3.      The claimant has the following residual functional capacity:  the claimant can perform medium work; she can lift and carry up to 50 pounds occasionally and up to 25 pounds frequently; she can stand for 6 hours in an 8-hour day; she can sit for 6 hours in an 8-hour day; she can perform postural activities frequently; the claimant should avoid concentrated exposure to noise; and she should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.

4.      Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant can perform her past relevant work as a project manager.

See id. at 25-33.

After the Appeals Council declined review on April 25, 2025, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1]      Citations are the to the Certified Administrative Record (CAR) lodged on August 20, 2025, ECF No. 10.

## III. DISCUSSION

In her opening brief, Plaintiff argues that the ALJ failed to properly evaluate her subjective statements and testimony.  See ECF No. 11-1, pgs. 3-8.

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other

5

inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

In determining residual functional capacity at Step 4, the ALJ considered Plaintiff's subjective statements and testimony. See CAR 29-30. The ALJ began by summarizing Plaintiff's subjective statements and testimony as follows:

> The claimant alleged that she was disabled due to long-term effects of COVID, hemangioma for intracranial space, hypothyroidism (low thyroid), and auto immune disease. She noted several symptoms from long COVID that included memory loss, loss of balance, comprehension issues, exhaustion, and migraines. She was unable to focus or concentrate on anything. She often had headaches with nausea. She had no energy and doing one to two tasks per day wiped her out. She had extreme fatigue and slept then to twelve hours per day. She had migraines five days in a row lasting three to three and hours a time. She had to a dark room and shut everything down. The claimant's impairments allegedly affected her walking, memory, completing tasks, concentration, understanding, following instructions, and using hands. She estimated that she could lift approximately ten pounds and pay attention for a few second[s] if it was verbal (Hearing Testimony, Exhibit 4E, 8E).

> CAR 29.

The ALJ offered the following analysis supporting his conclusion that Plaintiff's statements and testimony concerning the intensity, persistence, and limiting effects of her symptoms are "not entirely consistent" with the medical evidence and other evidence of record:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because, while the claimant continues to have some problems stemming from the original COVID infection, the allegations are not entirely consistent with the record. The claimant's level and response to treatment and examination findings reflect a greater level of functioning than alleged.

6

The claimant was infected with COVID-19 in November 2020 following a known COVID exposure (2F-4, 5F-30). She experienced ongoing symptoms of long COVID afterwards that included exhaustion and extreme fatigue, dizziness and balance issues, nausea, an inability to concentrate, cognitive decline, and heart palpitations (Exhibit 5F-13, 22, 30, 14F-195, 16F-21, 17F-2). It was noted in the treatment record that the claimant was a hiker and hiked five to seven miles often (Exhibit 5F-6). She was independent in activities of [daily living] and walked with her husband three times per week (Exhibit 13F-17).

The claimant also experienced severe headaches and migraines as a symptom of long COVID (Exhibit 5F-21, 22, 13F-14). She had painful headaches multiple times per day (Exhibit 4F-5). These were accompanied by sensitivity to light and sound (Exhibit 9F-6). Notably, imaging of the claimant's brain showed lesion that was likely hemangioma. However, treating providers did find that this lesion was completely incidental and unrelated to her headaches (Exhibit 3F-6, 9F-8).

On examination, the claimant has presented with normal cranial nerve findings, lungs clear to auscultation, normal gait, and no focal weakness (Exhibit 9F-7, 10F-7, 13F-15).

The claimant attended a consultative internal medicine examination in June 2023. She reported ongoing long COVID symptoms. She had chronic fatigue and slept ten to twelve hours a day. She had shortness of breath and heart palpitations. She experienced joint and muscle pain. She also reported cognitive issues and falls. She has had headaches since 2019 following head trauma, but they worsened and she was diagnosed with migraines in January 2023. She had headaches almost daily accompanied by nausea, photophobia, and phonophobia (Exhibit 12F-1). On examination, the claimant had lungs clear to auscultation, a regular cardiovascular rate and rhythm, and a normal gait without an assistance device. No range of motion deficits were noted. The claimant had full strength in her bilateral and upper extremities, including grip strength. The examiner noted that the physical exam was essentially unremarkable (Exhibit 12F-4).

CAR 29-30.

Plaintiff raises two arguments. First, she argues that the ALJ merely summarized the medical evidence and failed to explain how such evidence contradicted a specific portion of her subjective testimony. See ECF No. 11-1, pgs. 6-7. Second, Plaintiff contends that the ALJ improperly relied on activities of daily living. See id. at 7-8.

The Court addresses Plaintiff's second argument first and finds it unpersuasive. The Court agrees with Plaintiff that, where the ALJ relies on daily activities to discount a claimant's allegations of disability, such activities must show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical

7

functions that are transferable to a work setting." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  However, in this case the ALJ did not rely on Plaintiff's daily activities to show that Plaintiff could perform the demands of full-time work.  Rather, the ALJ cited specific activities, such hiking and walking, to demonstrate an inconsistency with Plaintiff's allegations of dizziness, fatigue, and balance issues related to long COVID.

Turning to Plaintiff's first argument that the ALJ's analysis merely recited the objective medical evidence without drawing any connection to specific statements and testimony found not entirely credible, the Court also finds this argument unpersuasive.  As noted above, the ALJ properly noted that Plaintiff's allegations of dizziness, fatigue, and balance issues were inconsistent with reports she made to doctors that she was a hiker who often hiked for five to seven miles.  Moreover, the ALJ noted that Plaintiff's allegations of severe headaches were inconsistent with the objective evidence of normal findings other than a lesion which was unrelated to headaches.  The Court finds that the ALJ's analysis adequately links specific testimony found not credible to specific portions of the objective evidence.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

8

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Plaintiff's motion for summary judgment, ECF No. 11, be denied

2. Defendant's cross-motion for summary judgment, ECF No. 16, be granted.

3. The Commissioner's final decision be affirmed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


Dated:  April 20, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE